MAYER, Circuit Judge,
dissenting.
I respectfully dissent. The claims asserted by DDR Holdings, LLC (“DDR”) fall outside 35 U.S.C. § 101 because they simply describe an abstract concept — that an online merchant’s sales can be increased if two web pages have the same “look and feel” — and apply that concept using a generic computer.
I.
The common specification of DDR’s patents notes that an online merchant will often lose customers when those customers click on an advertisement from a third-party vendor that has been displayed on the original merchant’s web page. See U.S. Patent No. 6,993,572 (the “'572 patent”) col.2 11.30-33. The specification explains, however, that the original merchant could potentially avoid “the loss of hard-won visitor traffic,” id. col.2 11.64-65, if he were able to dupe customers into believing that they were still on the merchant’s web page even when they were actually viewing goods from a third-party vendor, id. col.2 *1264 11.26-65. Notably, though, DDR’s patents are very vague as to how this duping is to occur, indicating only that the web page of the original merchant and that of the third-party vendor should be made to look alike using “visually perceptible elements.” -See U.S. Patent No. 7,818,399 (the “'399 patent”) col.28 11.31-32 (requiring the use of a “plurality of visually perceptible elenients visually corresponding to the [original merchant’s web] page”). DDR’s patents fail to meet the demands of section 101 because they describe a goal — confusing consumers by making two web pages look alike — but disclose no new technology, or “inventive concept,” Mayo Collaborative Servs. v. Prometheus Labs., Inc., — U.S. ---, 132 S.Ct. 1289, 1294, 182 L.Ed.2d 321 (2012), for achieving that goal. See O’Reilly v. Morse, 56 U.S. (15 How.) 62, 120, 14 L.Ed. 601 (1854) (rejecting a claim which covered “an effect produced by the use of electro-magnetism distinct from the process or machinery necessary to produce it”); In re Brooks, 24 CCPA 1203, 90 F.2d 106, 107-08 (1937) (“It is for the discovery or invention of some practicable method or means of producing a beneficial result or effect, that a patent is granted, and not for the result or effect itself.” (emphasis added) (citations and internal quotation marks omitted)).
DDR’s patents are long on obfuscation but short on substance. Indeed, much of what they disclose is so rudimentary that it borders on the comical. For example, the patents explain that two web pages are likely to look alike if they are the same color, have the same page layout, and display the same logos. See '572 patent col. 14 11.5-18. The recited computer limitations, moreover, are merely generic. The claims describe use of a “data store,” a “web page having a link,” and a “computer processor,” id. eol.29 11.1-13, all conventional elements long-used in e-commerce. Because DDR’s claims, like those at issue in Alice Corporation v. CLS Bank International, “simply instruct the practitioner to implement [an] abstract idea ... on a generic computer,” they do not meet section 101. - U.S. ---, 134 S.Ct. 2347, 2359, 189 L.Ed.2d 296 (2014); see id. at 2360 (rejecting claims requiring a “data processing system’” with a “communications controller” and a “data storage unit” as “purely functional and generic” (citations and internal quotation marks omitted)); Accenture Global Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1344 (Fed.Cir.2013) (rejecting claims requiring “a combination of computer components including an insurance transaction database, a task library database, a elient component, and a server component, which include[d] an -event processor, a task engine, and a task assistant”).
II.
The court concludes that the asserted claims of DDR’s '399 patent fall within section 101 because “they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.” Ante at 1257. This is incorrect. DDR’s claims do, in fact, simply take a well-known and widely-applied business practice and apply it using a generic computer and the Internet. The idea of having a “store within a store” was in widespread use well before the dawn of e-commerce. For example, National Leisure Group, Inc. (“NLG”), one of the defendants here, previously “sold vacations at ... BJ’s Wholesale Clubs through point of purchase displays in the 45 BJ’s Clubs along the Eastern Seaboard.” Br. of Defendants-Appellants National Leisure Group, Inc. and World Travel Holdings, Inc. at 4. DDR’s patents are directed to the same concept. Just as visitors to BJ’s Wholesale Clubs could purchase trav *1265 el products from NLG without leaving the BJ’s warehouse, the claimed system permits a person to purchase goods from a third-party vendor, but still have the visual “impression that she is viewing pages served by the [original host merchant].” '399 patent col.3 11.23-24; see ante at 1264 (explaining that DDR’s claimed system “permits a website visitor, in a sense, to be in two places at the same time”). Indeed, any doubt as to whether the claimed system is merely an Internet iteration of an established business practice is laid to rest by the fact that one of the named inventors acknowledged that the innovative aspect of his claimed invention was “[t]aking something that worked in the real world and doing it on the Internet.” J.A. 03208.
Alice articulated a technological arts test for patent eligibility. 134 S.Ct. at 2359 (explaining that the claimed method fell outside section 101 because it did not “improve the functioning of the computer itself’ or “effect an improvement in any other technology or technical field”). Here, the court correctly recognizes Alice’s technological arts standard, but applies it in a deficient manner. According to the court, DDR’s claims fall within section 101 because the “solution” they offer “is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.” Ante at 1257 (emphasis added). The solution offered by DDR’s claims, however, is not rooted in any new computer technology. Its patents address the problem of preventing online merchants from losing “hard-won visitor traffic,” '572 patent col.2 11.64-65, and the solution they offer is an entrepreneurial, rather than a technological, one. DDR has admitted that it did not invent any of the generic computer elements disclosed in its claims. J.A. 3311-16. There is no dispute, moreover, that at the time of the claimed invention the use of hyperlinks to divert consumers to particular web pages was a well-understood and widely-used technique. See '399 patent col.l 11.29-52. While DDR’s patents describe the potential advantages of making two web pages look alike, they do not disclose any non-conventional technology for capturing the “look and feel” of a host website or for giving two web pages a similar appearance. See Alice, 134 S.Ct. at 2360 (“[W]hat petitioner characterizes as specific hardware ... is purely functional and generic.”); Accenture, 728 F.3d at 1345 (rejecting claims that contained no “detailed software implementation guidelines”). DDR’s patents fall outside section 101 because they simply “tak[e] existing information” — the visual appearance of a host merchant’s website — and use conventional technology to “organiz[e] this information into a new form.” Digitech Image Techs., LLC v. Elecs, for Imaging, Inc., 758 F.3d 1344, 1351 (Fed.Cir.2014); see Mayo, 132 S.Ct. at 1298 (emphasizing that reciting “well-understood, routine, [or] conventional activity” does not impart patent eligibility).
In concluding that DDR’s claims meet the demands of section 101, the court focuses on the fact that “they recite a specific way to automate the creation of a composite web page____” Ante at 1259 (emphasis added). The Supreme Court, however, has emphatically rejected the idea that claims become patent eligible simply because they disclose a specific solution to a particular problem. See Bilski v. Kappos, 561 U.S. 593, 599-601, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) (concluding that claims fell outside section 101 notwithstanding the fact that they disclosed a very specific method of hedging against price increases); Parker v. Flook, 437 U.S. 584, 593, 98 S.Ct. 2522, 57 L.Ed.2d 451 (1978) (rejecting the argument “that if a process application imple *1266 ments a principle in some specific fashion, it automatically falls within the patentable subject matter of § 101”). Indeed, although the claims at issue in Alice described a very specific method for conducting intermediated settlement, the Court nonetheless unanimously concluded that they fell outside section 101. 134 S.Ct. at 2358-60.
Nor is the fact that the claims address an “Internetcentric problem,” ante at 1259, sufficient to render them patent eligible. The Supreme Court has repeatedly made clear that “limiting the use of an abstract idea to a particular technological environment” is insufficient to confer patent eligibility. Alice, 134 S.Ct. at 2360 (citations and internal quotation marks omitted); see also Mayo, 132 S.Ct. at 1294; Bilski, 561 U.S. at 610, 130 S.Ct. 3218. Accordingly, the fact that DDR’s system operates “in the context-of the Internet,” ante at 1258, does not bring it within patentable subject matter.
The potential scope of DDR’s patents is staggering, arguably covering vast swaths of Internet commerce. DDR has already brought infringement actions against ten defendants, including Digital River, Inc., Expedia, Inc., Travelocity.com, L.P., and Orbitz Worldwide, LLC. See J.A. 255-63; ante at 1250. DDR’s claims are patent ineligible because their broad and sweeping reach is vastly disproportionate to their minimal technological disclosure. See Mayo, 132 S.Ct. at 1303 (In assessing patent eligibility, “the underlying functional concern ... is a relative one: how much future innovation is foreclosed relative to the contribution of the inventor.”).
Alice made clear that claims untethered to any advance in science or technology do not pass muster under section 101. 134 S.Ct. at 2359. Viewed as a whole, DDR’s claims contain no more than an abstract idea for increasing sales implemented via “some unspecified, generic computer,” id. at 2360. The inventive concept, if any, embedded in DDR’s claims is an idea for “retaining control over the attention of the customer,” ante at 1258. Because this purported inventive concept is an entrepreneurial rather than a technological one, DDR’s claims are not patentable.